JUDGE DUVALL
delivered the opinion oe the court:
Harcourt borrowed from Lee $135, for which sum Harcourt executed his note, dated Newport, Kentucky, October 6, 1854, payble thirty days thereafter to M. Seddens, at the “ People’s Bank, Cincinnati.” Seddens, the nominal payee, was, in fact, the mere surety of Harcourt, and as such, indorsed the note to Lee, who also indorsed and deposited it, on the same day it was executed, in the People’s Bank, at Cincinnati, for collection. '
It appears that Manchester, who was the sole proprietor of the People’s Bank, had obtained from Smead, Collard & Hughes, who were also private bankers in Cincinnati, a loan of $20,000 for thirty days, from January 29th, 1854, and that, as collateral security for this debt, Manchester placed in the hands of Smead, &c., the notes of sundry individuals and various certificates of stock, amounting (nominally) to a sum considerably more than the amount loaned. This loan, according to the proof, was renewed monthly up to the 1st October, 1854, $2,000 of the principal having been paid in March, and the intez’est, at •the rate of two per cent, per month, having been paid monthly, in advance. The last renewal, therefore, was on the 1st day *630 of October, 1854, for $18,000, payable the first day of November following.
On the 12th of October, 1854, the note executed by Harcourt, and deposited by Lee with Manchester for collection, was taken by Manchester and placed in the hands of Smead, Collard & Hughes, as additional collateral security for the loan of the $18,000. In a few days afterwards Manchester suspended business and absconded.
In November following, this action was brought by Smead, Collard & Plughes against Harcourt, Seddens, and Lee, in which they claim to be the holders, by assignment, of the note just described, and upon which they claim a joint judgment against the defendants, the note having assumed the character of a bill of exchange.
Lee filed his answer, setting out the facts already stated, in regard to the execution of the note, and the deposit of it with Manchester for collection; he denies having assigned the note to the plaintiffs, and claims to be the true owner of the debt; and says that the plaintiffs and Manchester' were intimate in their business transactions; that the plaintiffs knew, when they received the note from Manchester, that it had been left with the latter for the mere purpose of collection; that Manchester was at the time in failing circumstances, and the plaintiffs knew it. He prays that his co-defendants, Harcourt and Sed-dens, be compelled to pay the amount due on the note, to him, and not to the plaintiffs.
Lee subsequently died, and the administrator filed answers, relying upon the same defense, and alleging, in addition, that the note sued on, and others which belonged to Lee, were deposited with the plaintiffs by Manchester, as collateral security for loans of money; that the securities so deposited by Manchester, which belonged to him, were of sufficient value to pay the amount of the loan without appropriating those which belonged to Lee. Other defenses, merely technical, were also set up.
Upon the trial, the court, to whom the law and facts wer® submitted, rendered a joint judgment against the defendants, for the amount of the note.
*631 From that judgment the administrator of Lee has prosecuted this appeal. The grounds mainly relied upon for a reversal, are:
1. That the appellees knew, or had reason to believe, when they received the note, that it had been left with Manchester for collection merely, and that he was not the beneficial owner of it.
2. That the appellees did not receive the note in the regular course of business, and for a fair and valuable consideration.
Numerous other minor points were made in argument which it will not become necessary to notice.
1. The testimony shows that there was considerable intimacy between the proprietors of the two banking houses, and that the appellees were fully aware of the embarrassed condition of Manchester’s pecuniary affairs about the time of the transaction in question. But the presumption arising from these circumstances, that the appellees knew, or had reason to believe, that Manchester was not the real owner of the note, strengthened as that presumption is, in some degree, by the direct testimony of several witnesses, is not sufficient, we think, in view of the opposing facts established by the record, to affect the appel-lees with notice of the infirmity or defect in Manchester’s title to the note, at the time of the transfer to them.
2. But the second ground of objection presents a more formidable question. As already stated, Lee was the real owner of the note, and it was deposited by Manchester with the appellees merely as collateral security for the pre-existing debt which Manchester had contracted, and which had not matured at the date of the transfer. It is not pretended that the appel-lees relinquished any previous security, or pai'ted with any new value upon the credit of this note, or that there was any consideration for the transfer of it, except the one stated. Can they then, under these circumstances, be regarded as bona fide holders for a valuable consideration, and did this unauthorized and fraudulent transfer of the instrument invest them with such a title as will prevail against the claim of the lawful and real ownér ?
*632 We are aware of no case in which the question here presented has ever been considered or decided by this court. And it is said that the question has not yet received a distinct adjudication in England, and that the cases in which it has incidentally arisen leave it in doubt what the inclination of judicial opinion is.
In the case of Bay vs. Coddington, (5 Johnson’s Ch. Rep., 54,) Chancellor Kent lays down the principle that the bona fide holder of negotiable paper, who has received it for a valuable consideration, without notice, or a reasonable ground to suspect a defect in the title of the person from whom it was taken in the usual course of business or trade, is entitled to full protection. But that where he has received it for an antecedent debt, as a mere collateral security for its payment, without giving up any security for such debt which he previously had, or paying any money, or giving any new consideration, he is not a holder of the note for a valuable consideration so as to give him any equitable right to detain it from its lawful owner. “ I have not been able (says the Chancellor) to discover a case in which the holder of negotiable paper, fraudulently transferred to him, was deemed to have as good a title, in law or equity, as the true owner, unless he received it, not only without notice, but in the course of business, and for a fair and valuable consideration given or allowed on his part, on the strength of that identical paper. It is the credit given to the paper, and the consideration bona fide paid on receiving it, that entitles the holder, on grounds of commercial policy, to such extraordinary protection, even in cases of the most palpable fraud. It is an exception to the general rule of law, and ought not to be carried beyond the necessity that created it.”
On an appeal to the Court of Errors, the question was again thoroughly examined, and the decision of the Chancellor affirmed. (20 Johnson’s Rep., 637.)
This may be regarded as the leading American adjudication on this subject, and the doctrine settled by it has been since adhered to by the courts of New York, New Hampshire, Pennsylvania, Tennessee, and of some of the other states.
*633 And although this doctrine is thus shown to rest on adjudications and opinions of great weight, it has, nevertheless, been denied by very high authorities.
In the case of Swift vs. Tyson, (16 Peters, 1,) it was held, Judge Story delivering the opinion of the majority of the court, that where the consideration for the transfer of a negotiable instrument not due is the payment of an antecedent debt, or the suspension of a previous right of action, or the relinquishment of any security, the holder will be regarded as a purchaser for value; and it is also said in the .opinion, that this rule equally obtained where the negotiable instrument was given merely as a collateral security for a precedent debt. But Justice Catron dissented from this portion of the opinion, on the ground that the point was not essential to the decision of the case, that it had not been argued, and that he was not prepared to adjudicate it.
In the subsequent case of Stalker vs. McDonald, (6 Hill, 95,) Chancellor Walworth, in criticising this opinion of Judge Story, admits that it is, of itself, entitled to great weight upon a question of commercial law, although what is said, in that opinion, respecting the transfer of a negotiable note as the mere security for an antecedent debt, was not at all material to the decision of any question then before the court, and is, therefore, not to be taken as a part of its judgment in the case.. The Chancellor goes into á very elaborate examination of the question, collating and reviewing the authorities, English and American, from all which he deduces the conclusion that the principle originally asserted by Chancellor Kent in Bay vs. Coddington, should be adhered to.
It would be altogether unprofitable to encumber this opinion rvith a citation of the great number of adjudged cases bearing upon the point under consideration, or with even an outline of the conflicting opinions which they present, of the eminent jurists who have considered it. It is sufficient to say that the principle which seems to be established by the weight of the authorities, as well as by reason and policy, is, that the holder of a commercial instrument, who has received it only as collateral security for an antecedent debt, and who is under no *634 legal obligation to forego the pursuit of any existing remedy, and who has, in no other form, parted with any value, or given for it any new or additional consideration, cannot be said to have taken such instrument in the regular course of business, and is not a bona fide holder, in the legal import of that phrase, and that the title which he thus acquires is subordinate to that of the true and rightful owner.
The general rule is, that the rightful owner of - property is entitled to recover it from any person in whose possession it may be found. To this rule, however, there is a well established exception, founded on principles of commercial policy, which allows the holder of negotiable paper, received in the usual course of trade, for a valuable consideration, though from a person having no right to make the transfer, to retain it against the claim of the previous and rightful owner, provided the holder took it without notice of the fraud. The reason of this exception is, that the innocent holder, having incurred loss by giving credit to the paper, and having paid a fair equivalent, is entitled to protection. But no principle of commercial policy requires that the privilege of this class of contracts should be extended beyond this reasonable limit. “What superior equity,” says Judge Woodworth, “has the holder, who made no advances, nor incurred any responsibility on the credit of the paper he received, whose situation will be improved if he be allowed to retain, but if not, is in the condition he was before the paper was passed. To allow such a state of facts -as sufficient to resist the title of the real owner, would be productive of manifest injustice, and is .not required by any rule of policy; it is enough if the holder be secure where he advances his funds, or makes himself liable on the credit of the paper he receives. In coincidence with this principle all the cases have been decided; for although the rule is laid down generally, that the holder will be protected where the bill or note is taken in the usual course of trade, and for a fair and valuable consideration without notice, in every case I have met with, where the owner failed to recover, it appeared that the holder gave credit to the paper, received it in the way of business, and gave money or property in exchange.” (20 Johns. Rep., 645.)
*635 From these principles it results that, upon the facts of this case, the appellees, having received the note in the manner and upon the terms stated, were not entitled to judgment upon it as against the claim asserted by Lee, who is shown to have been the lawful and real owner.
Wherefore, the judgment is reversed, and the cause remanded for a new trial and further proceedings in conformity with this opinion.