CASE 32—PETITION ORDINARY—JANUARY 10.

# May vs. Quimby & Co.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. If the bill of exchange was received *bona fide* in the discharge of an existing debt, whether the person so passing it to the plaintiffs was acting rightful or wrongful, the plaintiffs would be protected by the *law merchant* as having received it innocently for a valuable consideration in the regular course of business. (*Alexander & Co. vs. Springfield Bank*, 2 *Met.*, 535.)

2. The most sure and correct test as to whether the bill of exchange was received as actual payment, or as collateral security only, is to ascertain whether the party receiving the bill has precluded himself from suing on the original cause of action, or from recovering a judgment as to so much of his debt as the bill amounts to.

3. If the bill of exchange was not received absolutely as a payment of then existing demands, they cannot be deemed innocent holders for a valuable consideration, and as having received it in the usual course of business, and protected against its infirmities.

4. There was proof conducing to show that the bill was misappropriated, and not used for the purposes of its indorsement; and the jury, instead of the instruction given, should have been told that, if it was indorsed for other purposes, and then plaintiffs procured it as collateral for liabilities to them and not in discharge thereof, that this was not an innocent obtainment of it in due course of business and for a valuable consideration, and that they should find against the plaintiffs; but that, if they believed from the evidence that the plaintiffs received the bill as an absolute discharge of that much of their present demands, then this would be an innocent holding, in due course of business, upon a valuable consideration, and the indorsers responsible, no matter what was the original objects of their indorsement.

WM. MIX and
BODLEY & SIMRALL,                                          For Appellant,
                    CITED—
1 *Greenleaf on Ev.*, secs. 386, 390, 426, 522.
*Peak. Ev.*, 158; 1 *Starkie*, 125.

May vs. Quimby & Co.

*Phillips on Ev., note* 122, *p.* 161.

2 *Wendell*, 527 ; 15 *Pick.*, 543.

20 *Pick.*, 441 ; 8 *Pick.*, 51.

7 *Watts*, 272 ; 37 *Eng. C. L.*, 191.

10 *Ad. and El.*, 606.

12 *Pick.*, 565 ; *Schaak vs. Stafford.*

3 *Met.*, 246 ; *Finnell vs. Cox.*

1 *Met.*, 575 ; *Smith vs. Northern Bank.*

2 *J. J. M.*, 508 ; *Pendleton vs. Speed.*

1 *Dana*, 430 ; *Long vs. Ray.*

5 *Johnson's R.*, 54 ; *Ray vs. Coddington.*

1 *Met.*, 618–35 ; *Lee's adm'r vs. Smead, Collard, and Hughes.*

PIRTLE & CARUTH,                         For Appellees,
                    CITED—

1 *Greenleaf on Ev., sec.* 390.

2 *J. J. M.*, 508 ; *Pendleton vs. Speed.*

1 *Dana*, 430 ; *Long vs. Ray.*

2 *Met.*, 334 ; *Alexander & Co. vs. Springfield Bank.*

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

This was a suit by appellees against appellant and his co-indorser, W. A. Mayfield, on a bill of exchange drawn at Louisville, November 7th, 1864, at thirty days, for two thousand dollars, by Samuel Gamage to his own order, on Thomas Hughes & Co., Chicago, Illinois, accepted by them, and indorsed by Samuel Gamage, W. A. Mayfield, and W. J. May.

The defendants for defense averred that appellees were not the holders of said bill, nor had purchased it from any party thereto, or any other entitled to it, or had received it in the usual course of business, or had paid any valuable consideration for it to any party to it, or any

other person entitled to it; but that it had been drawn and indorsed for the purpose of enabling the drawer to purchase beans to be shipped to May, and that Gamage handed it to Brown, of the firm of Quimby & Co., to get it discounted, and pay the proceeds over for the purpose aforesaid; and that, instead of doing so, he fraudulently retained possession of the bill; also, .that Gamage had paid five hundred dollars on said bill, and denies any knowledge or notice of its dishonor.

Demurrers were sustained to the third, fourth, fifth, and seventh paragraphs of the answer; the first paragraph having been amended, the parties went to trial upon the issues substantially stated.

The third paragraph states that Brown agreed and promised to surrender the bill to these defendants on November 7th and 8th, 1864, and that he would not call upon them for it. It does not aver that Quimby & Co. were then the holders of said bill, nor upon what consideration, or indeed upon any, that said promise was made, and is, therefore, defective.

Fourth paragraph simply avers "that the draft sued upon was procured by plaintiffs by fraud;" but no facts are averred in which the fraud consisted. The demurrer was, therefore, properly sustained as to it.

Fifth and seventh paragraphs substantially aver that plaintiffs agreed with Gamage, if he would go to Nashville, Tennessee, and pay on their account five hundred dollars on certain grain contracts of plaintiffs, they would cancel said draft, and that Gamage did so go to Nashville, paid the five hundred dollars, and that plaintiffs accepted this in satisfaction of said draft; and also that, at plaintiffs' request, and for their benefit, Gamage incurred expenses on a trip to Nashville to the amount of two hundred dollars, and rendered services for them of

the value of two thousand dollars, to be applied in discharge of said draft.

Although, technically, the demurrers, perhaps, should have been overruled to these, yet the evidence so palpably shows that this was false pleading, that a reversal should not be allowed unless there are other and substantial errors.

The defendants had the benefit of a plea of payment for five hundred dollars, but made no attempt to prove it, not even in the excluded deposition of Gamage; hence, all this plea of going to Nashville, paying five hundred dollars, expending two hundred dollars, and rendering service of the value of two thousand dollars, must be regarded as sham.

The jury found in favor of the plaintiffs for the full amount of the debt, and the court rendered judgment thereon; and having overruled a motion for a new trial, May prosecutes this appeal.

The first serious error assigned is the exclusion of Gamage's deposition because of his interest, notwithstanding the defendants May and Mayfield had released him "*from all liability whatever that may arise or accrue from his having drawn*" said bill.

If Gamage was interested in the issue, and which was not, or could not be, released by the defendants, then it is clear that he was incompetent. If it was an interest which defendants could and did release, or which they could and did release so far as to make his interest equal to the respective parties, then he was competent.

It is evident that the plaintiffs claimed to hold said bill in discharge of so much of Gamage's indebtedness to them; therefore, on this score, if their claim was sustained, it would cancel that much of said indebtedness, and he would become indebted to the defendants for the

amount thereof and costs of suit, on their paying it. There can, however, be no doubt but this release would be sufficient to acquit him of the costs of the suit at least, and leave him only liable for the principal of the debt. He would then stand in equipoise as to interest.

But Gamage denies his indebtedness to Quimby & Co.; and, moreover, it appears that, November 10, 1864, he deposited with May, as collateral security, jewelry, watches, &c., valued at eleven hundred and sixty-five dollars, set down at one thousand and sixty-five dollars, beside a French box, an heir-loom, not valued, as evidenced by a copy of May's receipt to Gamage of that date. It is true that J. M Secrist claims that these things were deposited with May to secure him in a draft he drew at Louisville, September 20, 1864, for eighteen hundred and fifty dollars and two cents, at ten days, addressed to Samuel Gamage; but Secrist does not state that Gamage ever accepted this bill, nor that May ever indorsed it; on the contrary, a copy of this bill is exhibited, and does not show any acceptance by Gamage, but an indorsement by Secrist to May without date.   If this was a *bona fide* transaction, it was so indorsed before due, which must have been prior to October 3, 1864, more than a month before the date of May's receipt to Gamage for the articles deposited with him, dated November 10, 1864, to secure May for "*indorsements* and *advances*." If May had really taken up the bill, it might have a *pro rata* under the advancements secured, but nothing more. Secrist, however, states, that, by consent of the parties, one of the articles was sold at three hundred dollars, and the money paid to him; and as his deposition shows that May has paid nothing more, and as May is in nowise bound for its payment, all these articles remaining must be liable to May for "*indorsements*," he not having

shown any other advancements. As May neither indorsed for Gamage to Secrist, nor advanced to him, save the three hundred dollars, Secrist can have no lien upon these articles by virtue of May's receipt to Gamage, nor can May by reason of Secrist's claim.

Now, if Gamage can defeat plaintiffs' claim to this bill, then he redeems his property from a lien, and this is a sufficient interest to exclude him, for he denies his indebtness to Quimby & Co., and then exonerates his property from a lien, and this makes his interest preponderate against plaintiffs. There was no error in excluding his deposition, because incompetent, under *subdivision 6, section 670, Civil Code.*

. The only remaining error seriously urged is as to the following instruction, given at plaintiffs' instance : " That if the jury believe, from the evidence, that the plaintiffs took the draft before maturity, *and are innocent holders and owners for value* of the bill of exchange sued on, they must find for plaintiffs."

The evidence before the jury preponderated to establish the following facts :

1. That the bill was delivered by Gamage, the drawer, to Quimby & Co., on his then liabilities to them, and received a receipt from them of November 10th, 1864, specifying " *that the proceeds of the bill was to be applied on his account with them.*" This receipt is proven, by plaintiffs' clerk, to be in Gamage's receipt book, and is of the precise date of May's receipt to him for the collaterals to secure May for " *indorsements* and *advancements.*" It is also proven that Gamage, without objection or complaint, afterwards permitted plaintiffs to have a copy of both these receipts, and their clerk did copy them.

2. That May, from time to time, talked with one or the other of the plaintiffs, and professed to be satisfied they had received it in due course of business.

3. That plaintiffs offered to discharge May if he would deliver over to them the watches, jewelry, &c., deposited with him as collateral security by Gamage, which he agreed to do, but did not.

The statement of Griffith as to the car load of oats, said to be delivered by plaintiffs to Gamage at the time of taking the bill, is not deemed important, because this seems to be made by him rather by way of recital of what he understands to be the consideration, than the statement of a fact within his knowledge; for. he shows, in a subsequent part of his deposition, that he was not present when the transaction occurred, and personally knew nothing of it, but only so far as he had learned it from the parties; and because it is not otherwise proven, and does not comport with the language of plaintiffs' receipt to Gamage. The clerk of Gamage gave a different statement of the execution of plaintiffs' receipt to him, dated November 10th, 1864; but the credibility of these witnesses and their statements was a question for the jury. The whole question then depends upon the true construction of the receipt itself; for, as has been decided by this court in *Lee's adm'r vs. Smead, Collard, and Hughes* (1 *Met.*, 628), if it was.deposited as collateral, and not in discharge of an indebtedness existing at the time, and was an improper use of the bill, the indorsers are not responsible; but if received *bona fide* in the discharge of an existing debt, whether the person so passing it to the plaintiffs was acting rightful or wrongful, the plaintiffs would be protected by the *law merchant*, as having received it innocently for a valuable consideration, in the regular course of business, as adjudged by this court in *Alexander & Co. vs. Springfield Bank* (2 *Met.*, 535).

And the most sure and correct test as to whether received as actual payment or collateral security only, is to ascertain whether the party receiving the bill has precluded himself from suing on the original cause of action, or from recovering a judgment as to so much of his debt as the bill amounts to.

The language of this receipt is, " *the proceeds of said draft to apply on our account with Samuel Gamage.*" . What were the proceeds? Not the amount of the bill at the time of delivery. If not then, when? Evidently when the bill should be discounted or when paid. Suppose it should be neither discounted nor paid, how shall it bar a recovery upon the original debt, or go at all as a credit upon it? Had Quimby & Co. sued Gamage on his original indebtedness to them before this bill had been either discounted or become due, could he have plead its reception in bar of so much of the claim? What criterion would the court have fixed as the proceeds of the bill? How could this have been ascertained whilst the bill was unpaid and before discounted? Quimby & Co. did not agree to give Gamage credit for the full amount of the bill. Had they done so, they would have expressed it in the receipt.

Then, if they did not receive it absolutely as a payment of so much of their then existing demands on Gamage, they cannot be deemed innocent holders for a valuable consideration, and as having received it in the usual course of business, and protected against its infirmities.

There was proof conducing to show that the bill was misappropriated, and not used for the purposes of its indorsement, and the jury, instead of the instruction given, should have been told, that if it was indorsed for other purposes, and then plaintiffs procured it from Gam-

age as collateral for his liabilities to them, and not in discharge thereof, that this was not an innocent obtainment of it in due course of business, and for a valuable consideration, and that they should find against plaintiffs; but that if they believed, from the evidence, Quimby & Co. received the bill from Gamage as an absolute discharge of that much of their present demands on him, then this would be an innocent holding, in due course of business, upon a valuable consideration, and the indorsers responsible to them, no matter what were the original objects of their indorsement.

The instruction, as given, was misleading and erroneous, as it did not properly expound what was or was not an innocent holding, in the usual course of business, upon a valuable consideration; and, for this error, the judgment is reversed, with directions for a new trial and further proceedings consonant with this opinion.