CASE 2—PETITION—DECEMBER 5.

# Smith, &c. v. Lockridge.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

1. BLANKS IN A BILL OF EXCHANGE MAY BE FILLED. — A bill of exchange left blank as to date, amount, and address, when filled up for any amount by the party for whose benefit the bill is made, and discounted to an innocent holder, may be collected by him, although the amount exceeds that agreed upon by the original parties to the bill.

　　It is not material whether the bill was discounted and sold for money, or taken in payment of an existing debt.

2. *No one can accept a bill to whom it is not addressed,* and if it is so accepted the acceptor is not liable.

3. After a bill has been accepted by the parties to whom it is addressed and the bill perfected, the writing of an additional name across the face of the paper as acceptor, even with the knowledge of the party, and discounting it without the consent of the indorser, does not vitiate the paper.

4. *One indorser is a competent witness for another* where the issues are several and distinct.

5. WAIVER OF THE RIGHT TO NOTICE OF DISHONOR.—If the bill upon its face waives the right to notice of dishonor, no notice need be given; and if notice of dishonor is alleged in the petition, it need not be proven when the bill is made part of the petition.

APPERSON & REID, ⎫
O. S. TENNEY, . . ⎬ . . . . . . . . For Appellants,
WM. H. HOLT, . . ⎭

CITED

Story on Bills, sections 291, 194, 250, 243, 239, 240.
Redfield & Bigelow's Leading Cases on Bills, etc., 215.
Smith's Mercantile Law, 350, 225.
Phillips on Evidence, note 31.

Chitty on Bills, 83, 84.        4 Hill, 424, 442.
Byles on Bills, 174.            4 Term Rep. 320
2 H. Blackstone, 143.           9 Wheaton, 680.
3 Watts, 20, 25.                12 Pickering, 545.
8 Connecticut, 337.             6 Yerger, 387.

1 Parsons on Notes and Bills, 260.
2 Parsons on Notes and Bills, pages 556, 558, 564, 565.
19 Johnson, 391, Woodworth v. Bank of America.
5 Monroe, 25, Bank of Limestone v. Penick.
2 B. Monroe, 310, Johnson v. Bank of United States.
9 B. Monroe, 8, Shipp v. Suggett.
18 B. Monroe, 528, Lisle v. Rogers.
5 Littell, 205, Stout v. Cloud.
3 H. & G. 159, Mitchell v. Ringo.
1 Metcalfe, 576, Smith, adm'r, &c. v. North. Bank Ky.
5 Bush, 217, Turner, Wilson & Co. v. Browder.
8 Barbour, 664, Laden v. Vechten.
7 Bush, 89, Todd v. Edwards & Co.
5 Johnson's Chancery, 54, Bay v. Coddington, &c.
6 Hill, 93, Stalker v. McDonald, &c.
3 B. Monroe, 629, Breckinridge v. Moore.

2 Metcalfe, 537, Alexander v. Bank of Springfield.
1 Duvall, 391, Thompson v. Poston.
3 Bush, 97, May v. Quinby & Co.
1 American Leading Cases (H. & W.) 336.
2 Bligh, 391, Rowe v. Young.
13 Peters, 136, Wallace v. McConnell.
10 B. Monroe, 270, Smith v. Moberly.
14 B. Monroe, 352, Ward v. Northern Bank.
1 Duvall, 108, Terry & Bell v. Hazlewood.
5 Bush, 621, Whitaker v. Crutcher.
4 J. J. Marshall, 62, Hager v. Boswell, &c.
2 Wash. C. C. Rep. 191.
6 Barr, 164, Snider v. Riley.
4 Dana, 191, Bank of Com. v. McChord & Payne.

JAMES SIMPSON, . . . . . . . . . . . . For Appellee,

CITED

Story on Bills of Exchange, section 58.
Civil Code, section 161.
10 B. Monroe, 270, Smith v. Moberly.
14 B. Monroe, 52, Ward v. Bank of Kentucky.
1 Duvall, 13, Browning v. Fountain.
5 Bush, 621, Whitaker v. Crutcher.
1 Parsons on Notes & Bills, pages 576, 313.
1 Duvall, 108, Terry & Bell v. Hazlewood.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellee, D. S. Lockridge, instituted the present action in the Montgomery Circuit Court against the appellants, upon a bill of exchange for the sum of $5,625.25, dated May 21, 1869, and payable in ninety days. This bill was drawn by Lew. Lane upon W. T. and George Lane, and payable to the order of S. H. Lane. W. T. and George Lane accepted the bill, and the same was indorsed by S. H. Lane, Henry Smith, and John Jay Anderson, and was afterward discounted by the appellee, D. S. Lockridge.

Henry Smith and John Jay Anderson, two of the indorsers of the bill, and now the appellants in this case, filed their separate answers, containing various paragraphs, in which they allege in substance:

*First,* that they indorsed the bill for the accommodation and at the instance of W. T. Lane, and on the promise and assurance by him that it was for two thousand dollars, and was to be sold to the Clark County National Bank; that it was not sold to or negotiated by that bank; and that Lane afterward informed them that it was destroyed; of all which the plaintiff (the appellee) was informed before he became the holder and owner of the bill.

*Second,* that when they signed the bill it was accepted only by W. T. and George Lane, and that it was afterward altered by the insertion of the name of J. A. Blaydes as an acceptor, without their knowledge or consent.

*Third,* they allege a want of due notice of the protest and non-payment of the bill.

Upon the issues thus formed the case was submitted to a jury, and a verdict and judgment rendered in favor of the appellee for the amount of the bill and interest. The court below refusing the appellants a new trial, they have brought the case to this court for revision.

The evidence discloses the fact that the bill was made at the instance of W. T. and George Lane, the acceptors, to enable them to raise money, and that the appellants were only accommodation indorsers of the paper. The bill at the time it was indorsed by them had been accepted by W. T. and George Lane by writing their names across the face of the paper, but was blank as to date, place of payment, amount, and address. The bill in this condition was left with the acceptors, but seems not to have been negotiated by them at the time or place as understood by the parties. W. T. Lane was absent from the county for some time shortly after the making of the bill, and left it with George Lane, one of the acceptors. It seems that George Lane and one Blaydes were indebted to the appellee, Lockridge, and the bill owing Lockridge was about maturing, and George Lane in order to meet this paper used

the bill that had been indorsed by the appellants for his and W. T. Lane's benefit in paying his indebtedness to Lockridge. This *blank* bill was filled up for the amount of the Lockridge paper at the instance of George Lane, and delivered to Lockridge, and Lane at the same time taking in his bill held by Lockridge. The name of Blaydes was written across the face of the bill as acceptor on the day the blanks were filled, but whether before, at the time, or after it was delivered to Lockridge is involved in doubt. ·

The testimony of W. T. Lane shows that at the time the appellants indorsed the bill he told them that he wanted to raise five or six thousand dollars, and that less than two thousand dollars would not do him; that he was on the paper of George Lane and Blaydes to the appellee, but only as surety. There is no proof in the cause conducing to show that the appellee, who is the owner and holder of this paper, had any knowledge whatever at the time he discounted it as to the sum for which the blank was to be filled. The bill was intrusted with the acceptors for whose benefit it was made; *blank as to date, amount, and address;* and so far as innocent holders are concerned, or those who had no knowledge of the agreement or equities between the parties at the time the blank bill was signed or indorsed, the law will presume that the party intrusted with the paper for the purpose of raising money had the authority to fill up the blank not only as to date and address, but as to the amount also. The appellants had confided in the integrity of those for whose benefit the indorsement was made, and as between them and an innocent holder they must sustain the loss, unless the alteration alleged to have been made vitiated the paper. Any other view of this question would result in great injustice to innocent holders of such paper, and render it of but little value to the commercial world. Reference is made to the following authorities on this point, viz.: Bank of Commonwealth v. Curry, 2 Dana, 142;

Browning v. Fountain, 1 Duvall, 13; Smith v. Moberly, 10 B. Monroe, 270; Whittaker v. Crutcher, 5 Bush, 621; Ward v. Bank of Kentucky, 14 B. Monroe, 52; 1 Parsons on Bills, 110; Chitty on Bills, pages 53, 54, 57.

Nor is it material whether the bill was discounted and sold for money, or taken in payment of an existing debt. If the holder obtains the bill in good faith, either by paying the money or in the discharge of a debt due him, he is regarded in both cases as having acquired the right to it upon a valuable consideration. (Alexander & Co. v. The Springfield Bank, 2 Metcalfe, 534; May v. Quimby & Co., 3 Bush, 96.)

Counsel for the appellants insist, however, that the signing of the name of Blaydes upon the face of the paper by George Lane as an additional acceptor, after the appellants had indorsed it, without their knowledge or consent, destroyed the legal effect of the instrument as to them, and for this reason they are not liable. There is some evidence in the case conducing to establish the fact that when the appellee discounted the paper he knew that the name of Blaydes had been written upon it after its indorsement by the appellants; and it necessarily follows that if this knowledge upon his part, when established by satisfactory proof, defeats his right to recover of the appellants as indorsers of the bill, that this question should have been submitted to the jury, as insisted upon by appellants' counsel in an instruction offered and refused by the court below.

This bill when indorsed and left with the acceptors for the purpose of enabling them to raise money was blank not only as to date, place of payment, and the amount, but was also blank as to the address; and if Lane, whose right to use the paper is not questioned, at least so far as innocent holders were concerned, had inserted the name of Blaydes in the blank address, then the indorsers of the bill could not have escaped liability. When handed to the acceptors it was the mere

skeleton of a bill, with blanks left conferring upon the Lanes implied authority to complete and perfect it for the purposes for which it was signed, by filling the blanks with any amount so far as innocent holders were concerned, and addressing it to any person or persons they saw proper. In such a case as this, and with such negotiable paper, the commercial policy of the country requires that the paper should be sustained, unless there has been such an alteration with the knowledge of the holder before he becomes the owner of it as affects the legal or equitable rights of the parties. What liability did Blaydes assume by Lane's writing his (Blaydes's) name as acceptor on the bill? The bill was not addressed to him as an acceptor, and he was not liable as such. In Story on Bills, page 79, the following rule is stated: "If a bill is intended to be accepted by two persons it should be addressed to both, otherwise, although accepted by both, it will bind only the person to whom it is addressed as acceptor, for there can not be a succession of acceptors." Parsons in his work on Bills lays down the same doctrine, and says, "that if there be any other or further acceptance than that of the drawee, the person making it may be held as guarantor on his contract, if there be a consideration, but not as acceptor." Blaydes was not a party to the bill by reason of his name being placed upon it by Lane; he was not a drawee; nor does it appear that it was placed there with the intention of binding him as guarantor; and if it was, we can not perceive how it prejudiced the indorsers, who are the appellants in this case. The legal effect of the instrument was not changed by the insertion of his name; it had the same effect in every way upon the rights of all the parties to it that it had before the name of Blaydes was written upon it as acceptor.

Some of the elementary authors, in treating upon the subject of the alteration of written obligations, such as notes, bills, etc., lay down the doctrine that for the purpose of preserving

and maintaining the integrity of such instruments no alteration will be sanctioned without the consent of the parties to the paper, although no injury can arise to any of the parties, and no fraud is practiced in the alteration. This doctrine has been greatly modified, and the current of American authorities now holds that an alteration, divested of fraud, in a bill or note will not vitiate the paper, unless the alteration is material, and such as to change the legal or equitable rights of the parties.

In the case of Terry & Bell v. Hazlewood (1 Duvall, 104) this court, in an opinion rendered by Judge Peters, said that the striking out of the word "February" and inserting "March" after it had been executed, and without the consent of the obligor, did not vitiate his bond. This was a case where the keeper of a tobacco warehouse was required to execute bond, and in this case the court say "that the duties, liabilities, or obligations were not increased or changed in any manner by the alteration, and was certainly not prejudicial to the appellant;" and although such an alteration in a note or bond for the payment of money as made in the case *supra* would affect the instrument and the rights of the parties by increasing or prolonging their liability, still it lays down the general principle "that there must be some material alteration in order to destroy the obligation."

In the case of Smith v. Crooker (5 Massachusetts) it is held that "an erasure or alteration of an obligation made by an obligor or a stranger must be in some material part," etc. In 2 Parsons on Contracts, page 718, it is said "that if the alteration does not vary the meaning of the instrument, or does not affect its operation, there is no good reason why it should make the instrument void." The insertion of the name of Blaydes upon the paper not increasing or changing the obligations and duties of the indorsers or any of the parties to the bill, in any way, it can not be made available as a defense to the action. The appellant, Smith, during the progress of the

trial, offered his co-defendant, Anderson, as a witness to prove that it was understood when they indorsed the bill that it was to be filled up for two thousand dollars, and that W. T. Lane, one of the acceptors, afterward told him it had been destroyed. Anderson also offered Smith as a witness to prove the same facts, and in addition to prove that when the appellee obtained the bill the name of Blaydes was not upon it. The court below refused to permit them to testify. The issues made by the appellants in the case were distinct and several, and a verdict in favor of one would not have released the other, and could not have been used as evidence for the party against whom no judgment had been rendered. They were therefore competent witnesses for each other upon the issues made. (Smith v. Northern Bank of Kentucky, 2 Metcalfe.)

Their testimony, however, if admitted as stated in the bill of exceptions, the substance of which is given in this opinion, could not have affected the result of the case, and was not material to the issue. The plaintiff alleges in his petition that all the parties to the bill were duly notified of its dishonor, and in his attempt to prove this fact fails so as to charge the indorsers, and they are both released for want of notice, unless this right to notice had been dispensed with. The bill of exchange is copied into and made part of the petition, and upon its face shows that no notice was necessary, as the parties had expressly waived it. This allegation of notice was immaterial, and the defendants were not prejudiced by the effort upon the part of the appellee to prove the notice. Section 161 of the Civil Code provides "that the court must in every stage of an action disregard any error or defect in the proceedings which does not affect the substantial rights of the adverse party, and no judgment shall be reversed or affected by reason of such error or defect."

The judgment of the court below is affirmed.