RENFROW *v.* CITIZENS STATE BANK OF STILESVILLE.

[No. 12,496. Filed December 8, 1927. Rehearing denied February 16, 1928. Transfer denied April 4, 1928.]

319

*Blessing & Stevenson,* for appellant.
*S. C. Kivett* and *George W. Brill,* for appellee.

REMY, C. J.—On April 6, 1919, appellant, doing a live stock commission business under the name of the Charles Renfrow Company, with principal place of business at West Plains, Missouri, received an order from N. E. Woods and Son of Amo, Indiana, for one carload of stock hogs, with instructions to ship the hogs to Amo. At the time this order was placed, the buyer informed seller that Citizens Bank of Stilesville, Stilesville, Indiana, would honor draft for selling price. Upon receipt of the order, on April 7, 1919, the seller requested his banker, the Howell County Bank of West Plains, to make inquiry as to payment. In response to the request, the Howell County Bank sent to the Citizen Bank of Stilesville the following telegram: "Will you pay draft on N. E. Woods and Son drawn by Charles Renfrow Company for one car stock hogs?" The Stilesville bank wired in answer: "Will honor draft on N. E. Woods and Son." The selling price was $2,316.37, and for that sum the draft was drawn, and with the bill of lading attached was forwarded to the bank, and the hogs shipped to N. E. Woods and Son, Amo, Indiana. The draft was in the following language:

"No. 1960.          West Plains, Mo., April 9, 1919.
"Bank of Stilesville,
"Stilesville, Indiana:
   "Pay to the order of ourselves, $2,316.37 for one car No. N. & W. 26052, bill of lading attached, and charge to the account of
                         "The Charles Renfrow Company,
                                "Per Charles Renfrow.
"To N. E. Woods & Son."

This draft with bill of lading attached was forwarded to Stilesville, and was in the hands of the bank, April 12, 1919. On the day the shipment arrived at destination, some of the hogs were dead and others sick. Whereupon, appellee wired appellant: "Payment of draft N.

E. Woods and Son stopped by them, account condition of hogs." To this telegram, appellant answered: "What do you say about the Woods draft, have you paid it? If not please advise and see that hogs are fed and watered good till we can send a man there to dispose of them for your account." The bank replied: "Will not pay draft under present circumstances. Hogs in quarantine at stock pens, Amo." Subsequently, appellant came to Amo, took charge of the hogs, sold them to Indianapolis Abbatoir for $410.76, for which sum appellant gave credit as per telegram, and so notified the bank. The draft was not paid, and appellant commenced this action against the Citizens Bank of Stilesville. The complaint sets out the above facts, incorporating the draft, judgment for the amount of which is demanded. In addition to a denial, the bank in a second paragraph of answer pleaded the facts of the transaction that upon arrival at Amo, some of the hogs were dead, the remainder diseased and worthless, and alleged that upon receipt of the draft, the bank presented the same to N. E. Woods and Son who refused to accept it because of the condition of the hogs, and directed the bank not to pay it. A demurrer to the second paragraph of answer having been overruled, the issues were closed by reply in denial, and a special reply in which it was averred that when the draft was not accepted and the hogs not paid for, appellant took possession of the hogs and disposed of them for the account of the bank, receiving therefor $410.16, which sum he now holds for the benefit of the bank.

It appears from the pleadings that at the time the draft was drawn, the name of appellee was inadvertently written as the "Bank of Stilesville," instead of the

"Citizens Bank of Stilesville." This is not, as shown by the record, a material matter, and in this opinion the draft will be considered as if the mistake had not been made.

On the trial and for the purpose of showing failure of consideration as alleged in the second paragraph of answer, the court, over appellant's objection, admitted testimony as to the condition of the hogs at the time of their arrival at Amo.

The question for determination is whether the defense pleaded in the second paragraph of answer is available to appellee bank, and arises on exceptions to the court's ruling on demurrer to second paragraph of answer and on exception to the ruling of the court in admitting evidence as to the condition of the hogs upon arrival at destination.

Inasmuch as the Charles Renfrow Company was but the name used by Charles Renfrow in the conduct of his business, we shall in this opinion use the name of appellant in referring to the transaction, particularly in refering to the draft in question.

It is to be observed that appellant drew the draft making it payable to himself, and was therefore both the drawer and payee. At the top of the instrument, the drawer has addressed the bank, but in the lower left-hand corner, where the name of the drawee of a draft is usually placed, the address is to N. E. Woods and Son. It is significant that preceding the name "N. E. Woods and Son," the drawer has used the word "to" which is not used preceding the name of the bank at the top. Although the instrument is somewhat ambiguous, nevertheless, in the light of the bank's telegram to Renfrow that it would honor a draft drawn, not on itself, but on N. E. Woods and Son, we conclude that the firm of N. E. Woods and Son is the drawee. The designation of appellee bank at the top of the draft

is an indication that the bank had obligated itself to honor the draft on N. E. Woods and Son, and fixes the place of payment.

Section 132 of the Negotiable Instrument Act (Acts 1913 p. 120, §11491 Burns 1926) provides that "The acceptance of a bill of exchange is the signification by the drawee of his assent to the order of the drawer"; and it has many times been held by the courts that a bill of exchange must be accepted by the drawee, unless it is an acceptance for honor. *Kelley* v. *Frazier* (1855), 27 Ala. 497; *Heenan* v. *Nash* (1863), 8 Minn. 407, 83 Am. Dec. 790; *Smith, etc.,* v. *Lockridge* (1871), 71 Ky. (8 Bush) 423. It is not contended by appellant that appellee, by sending the telegram, became an acceptor for honor. If it had, it could avail him nothing, for §§162 and 165 of the Negotiable Instrument Act (Acts 1913 p. 120, §§11521 and 11524 Burns 1926) provide, that such acceptance must be in writing, and must indicate that it is an acceptance for honor, and that an acceptor for honor does not become liable until after protest for nonpayment. It follows that appellee is not liable as acceptor of the draft.

Not being liable as acceptor, what, if any, liability did appellee bank incur by its promise that it would honor draft on N. E. Woods and Son for price of the carload of stock hogs? The contract between the parties resulting from the exchange of telegrams was, in effect, that appellee would see that the consideration for the hogs was paid. It was a simple contract between the immediate parties thereto. Appellee knew from the telegram received from appellant that a carload of hogs was to be shipped to N. E. Woods and Son, and knew the kind of hogs. Otherwise it might not have agreed to honor draft for the price. The financial condition of N. E. Woods and Son might have been such that it would not have agreed to honor the draft

had it not been that N. E. Woods and Son were to get the hogs, and the kind of hogs they were buying. In selling the hogs to N. E. Woods and Son there was an implied warranty that there was to be a carload of live hogs fit for stock purposes. The obligation created by the exchange of telegrams is an ordinary contract obligation, and the action thereon being between the immediate parties thereto, it was proper for appellee to plead and prove failure of consideration.

The trial court did not err in overruling demurrer to second paragraph of answer, nor in the admission of evidence as to the condition of the hogs at the time of arrival at Amo.

Affirmed.